# Stewart's Appeal.

The acceptance of the bond of an executor by a legatee for the amount of his legacy, is an extinguishment of it.

A husband, who takes the bond of an executor for the legacy of his wife, and obtains a judgment upon it, thereby reduces it into possession, so that upon his death it will go to his personal representatives.

APPEAL from the decree of the Orphans' Court of *Cumberland* county.

Rule on James M'Ilhenny, administrator *de bonis non* with the will annexed of Robert Shannon, deceased, to show cause why he should not pay to James Stewart, administrator of Jane Stewart, deceased, a legacy bequeathed to her under the will of the aforesaid testator. The following statement of facts was agreed upon by the parties, upon which the court was to decree the payment of the legacy to said Stewart, or discharge the rule, should they be of opinion Stewart could not recover the same.

Robert Shannon, by his will, dated 21st of November 1795, and proved the 19th of February 1796, among other legacies, gave and bequeathed to Jane M'Elwain (afterwards intermarried with James Stewart, and now deceased,) £20, and directed all his property, real and personal, to be sold by his executors, and the above legacies and others mentioned in the will to be paid out of the proceeds of the sale after the death of Jane Shannon, widow of the testator. The widow of the testator died in December 1807. John and Joseph Shannon, the executors named in the will, died without making sale of the real estate of the testator, and letters of administration *de bonis*, &c., issued to James M'Ilhenny, the 13th of September 1826, who sold said real estate the 3d of October 1827, for $1320, one-half of which was payable 1st of April 1828, and the residue in four equal annual payments, the last of which became due 1st of April 1832. On the 13th of December 1836, the administrator presented his account to the Orphans' Court, in which he asked credit for sundry payments to legatees under the will of Robert Shannon, deceased. Exceptions were filed to his account, which was referred by the court to an auditor, to report the facts to the court. The auditor made report the 29th of January 1839, which was confirmed by the court. In this report the payment of legacies as aforesaid was allowed, and he reported that " the testimony rebutted all idea of payment by legal presumption from lapse of time." John Shannon, one of the aforesaid executors, gave his note to James Stewart, the hus-

[Stewart's Appeal.]

band of the aforesaid legatee, of which the following is a true copy:

"One day after date I promise to pay James Stewart, or order, $68.76, federal currency, for value received. Witness my hand and seal, this 14th of August 1822.

"JOHN SHANNON, [SEAL].

"Test, Andrew M'Elwain."

The consideration of this note was the legacy due as aforesaid. Judgment was entered on the note by a justice of the peace, the 15th of May 1823, and a transcript of the judgment filed in the prothonotary's office of Cumberland county, the 22d of February 1824. The said note, and the judgment thereon, has never been paid. It is admitted that the lapse of time, under the circumstances and facts of this case, will not raise the legal presumption of payment; but the administrator contends that the note, in connexion with the lapse of time since the note was taken, will prevent a recovery of said legacy. The will of the aforesaid testator, the account of the administrator, and the report of the auditor to whom the account was referred, are all to be considered a part of this case. Should the court be of opinion that the legacy can be recovered, then to make a decree for the payment of it by the administrator of Robert Shannon, deceased, with interest from such time as the court consider said legacy will bear interest; otherwise the rule to be discharged, either party to have the privilege of appealing to the Supreme Court without oath or bail.

The court below (Hepburn, President) discharged the rule.

*Graham*, for appellant, argued that the acceptance of the bond did not discharge the legacy, unless it was expressly taken in satisfaction. 15 *Serg. & Rawle* 114. If not taken in satisfaction, it was but an additional and collateral security. 10 *Serg. & Rawle* 307; 4 *Johns.* 404; 2 *Vern.* 190. The only reason for a presumption that a bond was taken in satisfaction, which has been assigned, is, that in such case the spiritual court would not take cognizance of it. 4 *Watts* 379.

*Biddle, contra.* The law is well settled that the acceptance of a bond extinguishes the legacy. 8 *Mod.* 328; *Yelv.* 39; 4 *Rawle* 476; 2 *Dess.* 254, 261; 1 *Rop. on Hus. and Wife* 212.

The opinion of the Court was delivered by

SERGEANT, J.—It has been so frequently held that the legatee's taking a bond from the executor for his legacy is a payment and extinguishment of it, that the point seems settled. *Goodwyn* v. *Goodwyn*, (*Yelv.* 39), is almost the very case before us. There a man, by his will, bequeathed £20 to his daughter. The executor entered into a bond of £40 to the daughter for payment thereof,

according to the will. The daughter married. Her husband sued the executor in the spiritual court as for a legacy. The executor pleaded payment, according to the bond, and because the spiritual judge would not allow this plea, the executor brought a prohibition, and showed for surmise the matter aforesaid. The court held the surmise good; for the executor, by his entering into bond to the daughter, for payment of the legacy, had extinguished the legacy, and made the £20 bequeathed a debt merely at the common law, and not suable there. *Gardner's Case,* cited in 8 *Mod.* 328, is to the same effect, and the opinion of Mr Justice Doderidge to the contrary is overruled. In *Geyer* v. *Smith,* (1 *Dall.* 347), it was decided that a creditor's taking a bond from the executor or administrator discharges the old debt, even though the bond be given as executor or administrator, for calling himself so is surplusage, and he is chargeable only in his own right. There is no ground for treating this single bill as a collateral security, as has been argued. The executor is bound for the legacy if he has assets, and may become personally responsible by a *devastavit.* It is, therefore, giving a bond, in a certain sense, for his own liability. Nor is there any strength in the argument which compares it to the case of a promissory note. A mere note is not payment unless received as such; and the presumption is that it is not received in payment, until it be shown the party agreed to take it as such. Whereas, where a party takes from his debtor a sealed instrument for a simple contract liability, the presumption is the reverse; and it lies on the party receiving it to show that it was not so received; and upon that distinction the case of *Wallace* v. *Fairman,* (4 *Watts* 379), went; for there it was expressly declared in the receipt, that the bond was only to be in full when paid.

Independent of this, the husband's suing alone on the sealed bill, and recovering a judgment, is such a complete reduction of it into possession, that it becomes vested in him or his representatives. 1 *Vern.* 396; 2 *Vez.* 677; 12 *Mod.* 346; 3 *Lev.* 103; *Noy* 70. Such being the case, had the wife survived the husband, his representatives could have recovered on the judgment. The wife certainly could not also have proceeded to recover it.

Judgment affirmed.